UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALANCED BODY UNIVERSITY, LLC, | No.  CIV. S-13-1606 LKK/EFB |
| Plaintiff, | **ORDER** |
| v. | |
| ZAHOUREK SYSTEMS, INC. and VALERIA ZAHOUREK, | |
| Defendants. | |

Plaintiff Balanced Body University, LLC ("BBU") sues defendants Zahourek Systems, Inc. ("ZSI") and Valeria Zahourek, an individual, alleging trademark violations.

Defendants move to transfer, stay, or dismiss based on the first-to-file doctrine, or in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a). (ECF No. 37.) Zahourek also moves to dismiss the case against her for lack of personal jurisdiction. (ECF No. 38.) BBU moves for leave to file a second amended complaint. (ECF No. 36.)

The motions came on for hearing on February 10, 2014. Having considered the parties' arguments and filings herein, the court

1

will grant defendants' motion to stay this action under the first-to-file doctrine, subject to the conditions set forth below.

**I.    BACKGROUND**

        **A. Factual Background**

    The following allegations are taken from the operative First Amended Complaint. ("FAC," ECF No. 14.)

    Defendant ZSI manufactures and sells models of the human skeleton in "Model Kits," which are used to teach human anatomy. Model Kits include blocks of clay in different colors, as well as shaping tools. One uses the clay and the tools to shape muscles and other bodily systems, which one then applies to the model skeletons. (FAC ¶ 4.)  As part of its business, ZSI has registered the trademark "Anatomy in Clay." (FAC ¶ 5.)

    Plaintiff BBU alleges on information and belief, first, that ZSI is a New Jersey corporation with its principal place of business in Loveland, Colorado, and second, that defendant Zahourek is an officer or employee of ZSI, and has represented to the U.S. Patent and Trademark Office that she is ZSI's Chief Executive Officer. (FAC ¶¶ 3, 6.)

    BBU is a California limited liability company with its principal place of business in Sacramento, California. (FAC ¶ 1.) BBU provides educational services in the field of exercise and movement, including the Pilates Method of Exercise. (FAC ¶ 2.) BBU teaches anatomy instruction courses using ZSI's Model Kits, which it purchased from time to time between 2004 and 2012. (FAC ¶ 12.) In August 2004, BBU adopted the trademark "Anatomy in

Three Dimensions" as the name under which it offered these
courses. (FAC ¶ 13.) BBU has also offered courses under the names
"Anatomy in Three Dimensions: An Introduction to Anatomy in Clay"
and "Anatomy in Three Dimensions: An Introduction to the Anatomy
in Clay Learning Systems." (FAC ¶ 16.)

In March 2010, Zahourek proposed that the two firms enter
into a licensing arrangement, whereby BBU would pay ZSI a
commission for courses which featured the Model Kits. (FAC ¶ 19.)
The parties negotiated over this proposal until October 2011.
(FAC ¶¶ 23, 28.)

During the negotiations, Zahourek sent BBU proposed
agreements licensing to BBU the use of three marks: "Anatomy in
Clay," "Maniken," and "Myologic" (the "Three ZSI Marks"). (FAC
¶ 21.) Attachments to the proposed agreements listed twenty-six
other unregistered marks, accompanied by "TM" symbols. (FAC
¶ 21.) Neither the proposed licensing agreements nor the
attachments mentioned the mark "Anatomy in Three Dimensions."
(FAC ¶¶ 21, 22.)

At no time during the negotiations, nor at any prior period,
did ZSI or Zahourek claim that "Anatomy in Three Dimensions" was
a trademark belonging to ZSI. (FAC ¶¶ 25, 26.) During the
negotiation period, ZSI and Zahourek were aware that BBU has
presented "Anatomy in Three Dimensions" courses in Chicago,
Denver, Miami, and Tampa, and had used that name for the course
description on its website. (FAC ¶ 24.)

Ultimately, the parties did not enter into a licensing
agreement. (FAC ¶ 27.) On October 10, 2011, BBU's attorneys sent
ZSI's attorneys a letter which provided that BBU would not enter

3

1    into a license or pay a fee for the use of the Three ZSI Marks.

2    (FAC ¶ 28.) On or before that date, BBU ceased use of the Three

3    ZSI Marks in connection with its "Anatomy in Three Dimensions"

4    courses. (FAC ¶ 29.) (BBU had previously used the marks "Anatomy

5    in Clay" and "Maniken" descriptively.) (FAC ¶ 26.)

6         On May 25, 2012, Zahourek caused ZSI to file applications

7    with the U.S. Patent & Trademark Office to register two marks:

8    "Anatomy in Three Dimensions" (the "AI3D Mark") and "Anatomy in

9    Three Dimensions An Introduction To Anatomy In Clay" (the

10   "Introduction Mark"). (FAC ¶ 31.)

11        Application Serial No. 85/636,050 (the "'050 Application")

12   was for the registration of the AI3D Mark. The '050 Application

13   claims the AI3D Mark's use in connection with:

14            Educational and instructional videos, CDs and
              DVDs . . .; Anatomical models and stands
15            therefor for scientific, instructional, and
              educational purposes . . .; modeling clay;
16            modeling wax . . .; publications and printed
              materials . . .; **Education and instructional**
17            **services, namely, courses, seminars,**
              **workshops, trainings, classes, lectures,**
18            **presentations, and demonstration [, all] in**
              **the fields of anatomy, physiology and**
19            **kinesiology.** (FAC ¶ 41) (emphasis added).

20   Application Serial No. 85/636,080 (the "'080 Application") was

21   for the registration of the Introduction Mark. It claims:

22
23            **[T]he mark was first used by the applicant or**
              **the applicant's related company or licensee**
24            **or predecessor in interest at least as early**
              **as 12/11/2004, and first used in commerce at**
25            **least as early as 12/11/2004, and is now in**
              **use in such commerce.** The applicant is
26            submitting one (or more) specimen(s) showing
              the mark in use in commerce on or in
27            connection with any item in the class of
              listed goods and/or services, consisting of
28            a(n) Web page and course catalog excerpt of

                                4

> Applicant's licensee showing use of the trademark in workshops. (FAC ¶ 34) (emphasis added).

Attached to the '080 Application were web pages and excerpts from BBU's catalog. (FAC ¶ 37.)

Both the '050 and the '080 Application provide:

> Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or license the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).

Both Applications also provide:

> **[U]se of the mark [is/will be] by a licensee, which use inures to the benefit of Applicant.** While Applicant understands that pursuant to TMEP Section 1201.03(f) the Trademark Office does not require an explanation of Applicant's control over the use of the mark, **the licensee may be adverse.** (FAC ¶¶ 35, 43) (emphasis added)

Both Applications also include the following sworn statement by Zahourek, made pursuant to 37 C.F.R. § 2.20:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that **he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered**, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; **to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in**

5

**commerce**, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true. (FAC ¶¶ 36, 44) (emphasis added)

The '080 Application (which addressed the Introduction Mark) matured into Reg. No. 4279015 (the "'015 Registration"), which registered on January 22, 2013. (FAC ¶ 33.)

As for the '050 Application (which addressed the AI3D Mark), an office action issued in which the Examining Attorney noted that the application required amendment. Two weeks later, ZSI's attorney filed an Amendment to Allege Use, and submitted accompanying specimens consisting entirely of pages from BBU's website showing BBU's use of the AI3D Mark. (FAC ¶ 50.) The AI3D Mark was registered at an unspecified point in 2013.

Until the filing of the '050 and '080 Applications, neither Zahourek nor ZSI claimed ownership of the two trademarks in question.[1] (FAC ¶¶ 40, 54.)

### B. Request for Judicial Notice

Defendants have filed a request for judicial notice ("RJN," ECF No. 37-2), which BBU opposes ("Oppo. RJN," ECF No. 40-8).

---

[1] ZSI justifies its registration of the AI3D Mark and the Introduction Mark on the grounds that "BBU had started to claim ownership of a phrase ("Anatomy in Three Dimensions") similar to ZSI's mark ("Anatomy in Clay"), and which BBU had historically used in association with both ZSI's products and ZSI's mark. [. . .] BBU's conduct creates confusion in the marketplace, and threatens to weaken ZSI's brand reputation." (Reply Mot. Transfer 3.)

1   This request must be addressed before the procedural background

2   of this case may be properly summarized.

3        A fact may be judicially noticed if it is "not subject to

4   reasonable dispute," either because it is "generally known within

5   the territorial jurisdiction of the trial court" or it is

6   "capable of accurate and ready determination by resort to sources

7   whose accuracy cannot reasonably be questioned." Fed. R. Evid.

8   201(b).

9        Defendants request that the court take judicial notice of

10  the docket in the case of Zahourek Systems, Inc. v. Balanced Body

11  University, LLC, No. 1:13-cv-01812-RM-CBS (D. Colo.), filed by

12  defendant ZSI against plaintiff BBU on July 10, 2013 ("Colorado

13  Action"). The court will do so, as it "may take notice of

14  proceedings in other courts, both within and without the federal

15  judicial system, if those proceedings have a direct relation to

16  matters at issue." Bias v. Moynihan, 508 F.3d 1212, 1225 (9th

17  Cir. 2007) (citation omitted). Plaintiff does not oppose this

18  request. (Oppo. RJN 4.)

19       Defendants also request that the court take judicial notice

20  of nineteen facts derived from documents filed in the Colorado

21  Action.

22       Many of these facts are contained in a document entitled

23  "Verified Petition to Compel Arbitration" and exhibits thereto,

24  filed by ZSI in the Colorado Action. ("Initial Petition," RJN

25  Exh. B, ECF No. 37-2). This filing named "Balanced Body, Inc."

26  rather than "Balanced Body University, LLC" as defendant. ZSI

27  subsequently filed a Verified First Amended Petition to Compel

28  Arbitration ("Amended Petition," RJN Exh. G), which properly

7

1  names "Balanced Body University, LLC" (*i.e.*, BBU, the plaintiff

2  herein) as defendant.

3       Plaintiff objects to the taking of judicial notice of facts

4  contained in the Initial Petition and its exhibits because

5  Balanced Body, Inc. was not a party to the Colorado Action at

6  that point, and therefore, "[t]he document has no relevance or

7  bearing on this case." (Oppo. RJN 4.) Plaintiff's argument is

8  without merit. Plaintiffs commonly name the incorrect defendant

9  at the outset of an action; the fact that the proper defendant is

10  named at a later time does not affect the relevance of the

11  initial pleadings and exhibits to the action.

12       In light of the foregoing, the court will consider the facts

13  for which defendants seek judicial notice.

14       The first eighteen and the twenty-first fact proffered by

15  defendants concern either the titles of,[2] or text contained

16  within,[3] documents filed in the Colorado Action. The court will

17  take judicial notice of these facts, as they are "capable of

18  accurate and ready determination by resort to sources whose

19  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

20  However, the "veracity and validity of [the filings'] contents

21  (the underlying arguments made by the parties, disputed facts,

22  _____

23  [2] *e.g.*, #5. "In the Colorado Action, on July 22, 2013, Balanced
   Body, Inc. filed a document titled 'Motion to Dismiss Plaintiff's

24  Verified Petition to Compel Arbitration in Lieu of Answer under
   Rule 12(b)(6).'"

25  [3] *e.g.*, #21. "Paragraph 3 of the 'Affidavit of Kenneth Endelman in

26  Support of Defendant's Motion to Dismiss Plaintiff's Verified
   Petition to Compel Arbitration" filed on August 5, 2013, states

27  in part: "BBU [defined as referring to Balanced Body University,
   LLC] was formed on February 10, 2004, and is wholly-owned by BBI

28  [defined as referring to Balanced Body, Inc.].'"

1    and conclusions of applicable facts or law)" are not properly the

2    subject of judicial notice. <u>U.S. v. S. Cal. Edison Co.</u>, 300 F.

3    Supp. 2d 964, 974 (E.D. Cal. 2004) (Wanger, J.).

4         The nineteenth and twentieth facts for which defendants seek

5    judicial notice are contained in documents issued by the federal

6    Administrative Office of the Courts ("AOC"). They concern

7    judicial caseloads for courts in the District of Colorado and the

8    Eastern District of California. The AOC is a "source[] whose

9    accuracy cannot reasonably be questioned," and the facts cited

10   are "capable of accurate and ready determination" by referring to

11   Internet addresses provided by the defendants. Fed. R. Evid.

12   201(b). Accordingly, the court will take judicial notice of the

13   following facts:

14           19. The Administrative Office of the U.S.
         Courts has issued a statistical report
15       containing the following statistics for the
         Eastern District of California for the 12-
16       month period ending September 30, 2013:
         a) Number of Judgeships -- 6
17       b) Pending Cases per Judgeship -- 1,351
         c) Weighted Filings per Judgeship -- 920
18       d) Median Time from Filing to Disposition in
         Civil Cases -- 9.7 mos.
19       e) Median Time from Filing to Trial in Civil
         Cases -- 50.0 mos.
20
             20. The Administrative Office of the U.S.
21       Courts has issued a statistical report
         containing the following statistics for the
22       District of Colorado for the 12-month period
         ending September 30, 2013:
23       a) Number of Judgeships -- 7
         b) Pending Cases per Judgeship -- 467
24       c) Weighted Filings per Judgeship -- 663
         d) Median Time from Filing to Disposition in
25       Civil Cases -- 6.2 mos.
         e) Median Time from Filing to Trial in Civil
26       Cases -- 27.7 mos.

27

28

## C. Procedural Background

On July 10, 2013, ZSI initiated the Colorado Action by filing the Initial Petition, naming "Balanced Body, Inc." as defendant. (RJN 1.) Balanced Body, Inc. acknowledged being served on July 17, 2013. (RJN 6.) BBU subsequently acknowledged that Balanced Body, Inc. is its parent company. (RJN 21.) On August 20, 2013, ZSI filed the Amended Petition, naming BBU as defendant. (RJN 7, 8.) The Amended Petition alleges that BBU is a party to a contract entitled "Product License Agreement." (RJN 9.) A document with this title is attached as Exhibit D to the Amended Petition; it provides in pertinent part:

- "The validity and interpretation of this Agreement shall be governed by and construed in accordance with Colorado law except as to copyright and other proprietary matters which may be preempted by United States law and international treaties." (RJN 11.)

- "The parties agree to exclusively submit any controversy or claim arising hereunder or in any way arising from their relationship or use of Intellectual Property to confidential binding arbitration in Larimer County, Colorado, to the extent permissible under law . . . ." (RJN 12.)

The Amended Petition alleges that BBU breached the Product License Agreement through "inappropriate use of Zahourek's trademarks 'Anatomy in Three Dimensions' and 'Anatomy in Three Dimensions An Introduction to Anatomy' and unlicensed use and display of copyright protected products on Defendant's website

1    and in Defendant's courses." (RJN 15.) The Amended Petition also

2    alleges BBU's breach of contract, specifically the Product

3    License Agreement.

4        BBU claims that it was unaware of ZSI's registration of the

5    AI3D Mark and the Introduction Mark until it was served with the

6    pleadings in the Colorado Action. (Plaintiff's Opposition to

7    Motion to Transfer ("Oppo. Mot. Transfer") 13-14, ECF No. 40.)

8    BBU also contends that ZSI failed to make a proper arbitration

9    demand (as required by the Federal Arbitration Act) prior to

10   filing the Colorado Action. (Id.)

11       On August 26, 2013, BBU filed a motion to dismiss the

12   Amended Petition. (RJN Exh. A.) On September 16, 2013, ZSI filed

13   an opposition thereto, and on September 27, 2013, BBU filed a

14   reply. (Id.) On January 13, 2014, ZSI filed a motion to amend the

15   Amended Petition. There appears to have been no court activity in

16   the Colorado Action to date. Moreover, as BBU's only filing is a

17   motion to dismiss, BBU does not appear to have affirmatively

18   litigated the case in Colorado.

19       BBU commenced the instant action on August 5, 2013. It filed

20   the operative First Amended Complaint on September 10, 2013.

21   ("FAC," ECF No. 14.) The FAC pleads claims under the federal

22   Lanham Act for (i) cancellation of trademarks on the basis of

23   fraud, [4] (ii) cancellation of trademarks on the basis of priority

24   _____

25   [4] "Pursuant to 15 U.S.C. § 1120, any person who procures PTO
     registration of a mark 'by a false or fraudulent declaration or

26   representation, oral or in writing, or by any false means, shall
     be liable in a civil action by any person injured thereby for any

27   damages sustained in consequence thereof.' To prove a federal
     trademark was procured by fraud, the plaintiff must prove:

28   (1) the false representation regarding a material fact; (2) the

11

of use, and (iii) unfair competition, as well as causes of action under California law for (i) misappropriation of trademark and (ii) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200.

BBU prays for, *inter alia*, (i) cancellation of the AI3D and Introduction Marks; (ii) an injunction preventing ZSI from using these Marks in commerce;[5] (iii) an order directing "the destruction of any labels, signs, posters, prints, press kits, advertisements, web pages and other matter mentioning or relating to the [M]arks"; (iv) an order "[r]equiring [defendants] to take any action as may be directed by the Court for the purpose of attempting to alleviate or remedy any confusion among consumers that may have resulted from its conduct complained of herein"; and (v) damages, including punitive and treble damages.

In response, ZSI filed motions (i) to dismiss Zahourek as a defendant and (ii) to transfer this action to the District of Colorado. (ECF Nos. 17, 19.) On January 7, 2014, the court denied

_____

registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 874 (10th Cir.1995) (quotation omitted). The question is not whether the statement is factually false, but whether the applicant subjectively believed it was false at the time he or she made the representation. Id. If this showing is made, the mark's registration may be cancelled. 15 U.S.C. § 1064(3). '[T]he burden of proving that a party fraudulently procured a trademark registration is heavy.' Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990)." Ricks v. BMEzine.com, LLC, 727 F. Supp. 2d 936, 967 (D. Nev. 2010).

[5] Based on its motion papers, BBU's principal concern appears to be that ZSI is licensing its (BBU's) competitors to use the AI3D and Introduction Marks, which obviously threatens BBU's business.

1  these motions without prejudice, on the grounds that they were

2  based on a defective request for judicial notice. (ECF No. 33.)

3  ZSI now renews these motions, while BBU moves for leave to amend

4  the operative complaint.

5      ZSI also indicates that if the court denies its motion to

6  transfer, it will move to compel arbitration herein. (Defendants'

7  Motion to Transfer ("Mot. Transfer") 8, ECF No. 37.)

8      The court will now turn to defendants' motion to transfer

9  this action to the District of Colorado (or in the alternative,

10  to issue a stay) under the "first-to-file" rule.

11  **II.  STANDARD**

12      The "first-to-file" rule is a "doctrine of federal comity

13  which permits a district court to decline jurisdiction over an

14  action when a complaint involving the same parties and issues has

15  already been filed in another district." Pacesetter Sys., Inc. v.

16  Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). "The most

17  basic aspect of the first-to-file rule is that it is

18  discretionary; 'an ample degree of discretion, appropriate for

19  disciplined and experienced judges, must be left to the lower

20  courts.'" Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622,

21  628 (9th Cir. 1991) (quoting Kerotest Mfg. Co. v. C-O-Two Fire

22  Equipment Co., 342 U.S. 180, 183-84 (1952)). Although

23  discretionary, the rule "serves the purpose of promoting

24  efficiency well and should not be disregarded lightly." Church of

25  Scientology of Cal. v. U.S. Dept. of the Army, 611 F.2d 738, 750

26  (9th Cir. 1979). In applying the first-to-file rule, a court

27  looks to three threshold factors: (1) the chronology of the two

28

1    actions; (2) the similarity of the parties, and (3) the

2    similarity of the issues. <u>Alltrade</u>, 946 F.2d at 625–26.[6]

3        The court may transfer, stay, or dismiss the action if the

4    threshold requirements are met. <u>Id.</u> at 622. But it retains

5    discretion to disregard the first-to-file rule in the interests

6    of equity, *e.g.*, when the filing of the first suit evidences bad

7    faith, anticipatory suit, or forum shopping. <u>Id.</u> at 628.

8    **III. ANALYSIS**

9                    **A. Similarity of the issues presented**

10       There is little doubt that the first two factors under the

11   "first-to-file" rule have been satisfied: (1) the Colorado Action

12   was filed before the instant action, and (2) the parties to the

13   two suits are similar. (Moreover, if Zahourek is dismissed, the

14   parties will be identical.) The parties' dispute lies with the

15   third factor, the similarity of the issues presented.

16       BBU argues that the issues are dissimilar: the instant

17   action is based on ZSI's misappropriation of BBU's trademarks,

18   while the Colorado Action consists of "nothing more than a

19   petition to compel arbitration based on allegations of breach of

20   contract." (Oppo. Mot. Transfer 10.) BBU adds:

21                   The [Colorado] Action does not seek a
22                   determination of anyone's rights under the

---

23   [6] Several district courts, including this one, have held that the
24   parties and the issues need only be "substantially similar," not
     identical, to satisfy these requirements. <u>See</u> <u>Tompkins v. Basic</u>
25   <u>Research LLC</u>, No. S-08-244 LKK/DAD, 2008 WL 1808316, 2008 U.S.
     Dist. LEXIS 81411 (N.D. Cal. Apr. 22, 2008) (Karlton, J.);
26   <u>Inherent.com v. Martindale-Hubbell</u>, 420 F. Supp. 2d 1093 (N.D.
     Cal. 2006) (Wilken, J.); <u>British Telecomm. v. McDonnell Douglas</u>
27   <u>Corp.</u>, No. C-93-0677, 1993 WL 149860, 1993 U.S. Dist. LEXIS 6345
     (N.D. Cal. May 3, 1993) (Patel, J.).

28

Lanham Act, but . . . takes as its starting
point that ZSI is the owner of the
Introduction and AI3D Marks . . . . This
case, however, is based on ZSI's
misappropriation of BBU's rightful
property . . . . [BBU] seeks to cancel ZSI's
fraudulent registrations and hold Defendants
accountable for their tortious conduct. The
issues in the two cases are therefore not
substantially similar. (Oppo. Mot. Transfer
11.)

ZSI counters that the Colorado Action and the instant action

present "several common issues: (1) ownership of the [AI3D and

Introduction Marks], (2) the validity of ZSI's Product License

Agreement, and (3) the arbitrability of both ZSI's claims against

BBU and BBU's claims against ZSI." (Reply Memorandum In Support

of Defendants' Motions to Transfer ("Reply Mot. Transfer") 7, ECF

No. 44.) Consequently, ZSI argues that maintaining proceedings

here and in Colorado could lead to "diametrically opposed

conclusions" regarding these common issues: specifically, the

Colorado court or arbitrator may find that BBU infringed on ZSI's

AI3D and Introduction Marks, while this court may find that ZSI

misappropriated those marks. (Id.) ZSI also makes a strong

argument that both actions will involve the same evidence

regarding, *e.g.*, registration of the disputed trademarks, both

parties' use of those trademarks, BBU's product purchases from

ZSI, etc. (Mot. Transfer 9.)

### B. Bad faith, anticipatory suit, or forum shopping

BBU contends that, even if the three factors above are

satisfied, transfer is not warranted, as ZSI's filing of the

Colorado Action evinces bad faith. In support of this position,

BBU points to (i) the many alleged misrepresentations made by ZSI

15

1   to secure the disputed trademark registrations, and (ii) alleged

2   subterfuges in how the AI3D and Introduction Marks were added to

3   the terms of the Product License Agreement. However true, these

4   contentions are unpersuasive, as they do not go to ZSI's bad

5   faith in filing the Colorado Action.

6       BBU's better argument is that the Colorado Action should not

7   be considered the "first-filed action" because ZSI violated the

8   Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") in order to

9   gain an unfair advantage. Under the FAA, only "[a] party

10  aggrieved by the alleged failure, neglect, or refusal of another

11  to arbitrate under a written agreement for arbitration may

12  petition [a U.S.] district court . . . for an order directing

13  that such arbitration proceed . . . ." 9 U.S.C. § 4. BBU alleges

14  that ZSI, rather than complying with these requirements,

15  simultaneously served it with an arbitration demand and the

16  already-filed complaint in the Colorado Action.[7] (Oppo. Mot.

17  Transfer 13-14.) In other words, ZSI failed to present BBU with a

18  pre-suit arbitration demand as required by the FAA. ZSI has no

19  response to this argument except to assert that "these arguments

20  are better made to the federal district court in Colorado, where

21  the petition to compel is actually pending." (Reply Mot. Transfer

22  9.) ZSI's counsel reiterated this position at oral argument.

23

24  _____

[7] BBU also contends that had it learned of the disputed trademark
25  registrations prior to July 17, 2013 (the date on which its
parent company, Balanced Body, Inc., was served in the Colorado
26  Action), it would have filed the instant action "at the first
opportunity." (Oppo. Mot. Transfer 14.) The court does not
27  ordinarily put much stock in hypothetical courses of action, and
as BBU has not cited to any declaration in support, the court has
28  disregarded this statement entirely.

1    Assuming BBU's allegation is true, the court is concerned

2    that, if it orders this action transferred and the Colorado court

3    ultimately does not order the dispute to arbitration, ZSI would

4    nevertheless win a significant procedural victory: the chance to

5    litigate in its home state, rather than in this judicial

6    district. In other words, BBU will have lost its choice of

7    judicial venue. (BBU may also be precluded from pleading its

8    California causes of action in Colorado district court.) I

9    hesitate, through the exercise of the transfer power, to

10   inadvertently sanction a course of conduct whereby a party

11   blindsides its opponent with a petition to compel arbitration

12   without first filing an arbitration demand, knowing that even if

13   arbitration is ultimately denied, it may still proceed in its

14   preferred judicial venue as the "first to file."

15        **C. The possibility of a stay**

16       ZSI moves in the alternative for a stay of this action,

17   pending resolution of the Colorado Action. The merits of this

18   approach are several.

19       As noted above, there is a real risk that this court and the

20   Colorado court may issue inconsistent rulings as to

21   arbitrability. Under the FAA, a district court's role is to

22   determine "(1) whether a valid agreement to arbitrate exists,

23   and, if it does, (2) whether the agreement encompasses the

24   dispute at issue." Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052,

25   1058 (9th Cir. 2013) (*en banc*) (quoting Chiron Corp. v. Ortho

26   Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). If

27   these requirements are met, the FAA mandates the district court

28   to direct the parties to arbitration. Id. In the disputes between

1   BBU and ZSI, the risk of inconsistent rulings is heightened by

2   the paucity of guidance on whether an arbitrator may issue a

3   decision that would lead (upon confirming court order) to the

4   cancellation of registered trademarks. BBU asserts that "an

5   arbitrator has no authority to cancel ZSI's improperly obtained

6   trademark registrations . . . ." (Oppo. Mot. Transfer 12.) ZSI

7   has not addressed this point. According to a leading treatise,

8   "There are no legal barriers to arbitration of trademark

9   disputes . . . ." J. Thomas McCarthy, 6 McCarthy on Trademarks

10  and Unfair Competition § 32:197 (4th ed. 2013). The same treatise

11  provides that "[j]udicial review of trademark arbitration is

12  usually quite limited. The Supreme Court has held that the [FAA]

13  sets out the sole and exclusive grounds to modify or vacate an

14  arbitration award." Id. (citing Hall Street Assocs., L.L.C. v.

15  Mattel, Inc., 552 U.S. 576, 581 (2008)). According to the latter

16  case, the FAA "supplies mechanisms for enforcing arbitration

17  awards: a judicial decree confirming an award, an order vacating

18  it, or an order modifying or correcting it." Hall Street, 552

19  U.S. at 582 (citing 9 U.S.C §§ 9-11). Nevertheless, research has

20  failed to uncover a single case in which a federal court was

21  asked to confirm an arbitral award canceling a trademark

22  registration. The absence of precedent increases the chances that

23  inconsistent decisions as to arbitrability will issue from this

24  court and the Colorado court.

25       Further, if some or all of the Colorado Action turns out not

26  to be arbitrable, it would be inequitable to let ZSI have its

27  choice of forum despite (as is alleged) its failure to properly

28

1  follow the FAA's procedures in presenting BBU with an arbitration

2  demand.

3      The optimal course of action, then, is to prevent

4  inconsistent arbitrability rulings, while not rewarding

5  allegedly-inequitable conduct with respect to the parties' choice

6  of forum. As the Colorado district court is as competent as this

7  court to decide the question of arbitrability, this goal may be

8  met through the issuance of a stay.

9      In its complaint herein, BBU raises a number of substantive

10  claims, for cancellation of trademarks, damages, and injunctive

11  relief, that were not raised by ZSI's arbitration petition.[8]

12  Accordingly, the court will stay the action pending the Colorado

13  court's ruling on ZSI's petition to compel arbitration. To the

14  extent any substantive claims raised by BBU herein are deemed

15

16  _____

17  [8] The parties dispute the proper interpretation of paragraphs in
   the Amended Petition which provide, "The nature of the dispute

18  includes breach of contract and, alternatively and only if
   necessary apart from arbitration, related issues of trademark
   infringement, copyright infringement, unfair competition

19  (multiple basis), misappropriation (multiple basis), deceptive
   trade practices, misrepresentation, each under various states'

20  laws as applicable, business liability, and individual liability
   for infringement related activities" (Amended Petition ¶ 33) and,

21  "Alternatively, and only if not . . . compelled to arbitration,
   the Court should proceed with breach of contract and violation of

22  related rights and clauses including but not limited to
   trademark, copyright, unfair competition, and

23  misappropriation . . . ." (Id. ¶ 56.) ZSI claims that this
   language pleads substantive claims as an alternative to

24  compelling arbitration. (Reply Mot. Transfer 5.) BBU counters
   that ZSI has pled only a single cause of action, to compel

25  arbitration, and that if the Colorado court does not so compel,
   then the Amended Petition will be dismissed "and there will be no

26  other issues to adjudicate." (Oppo. Mot. Transfer 10.) ZSI
   responds that even if the Colorado court were to grant BBU's to

27  dismiss, the dismissal would likely be without prejudice. (Reply
   Mot. Transfer 5.)

28

1  non-arbitrable, then litigation can commence as to those claims

2  in this judicial district.

3  **IV.  CONCLUSION**

4      In light of the foregoing, the court hereby orders as

5  follows:

6      [1] Defendants' motion to stay this action under the first-

7      to-file doctrine (ECF No. 37) is GRANTED, subject to the

8      following: plaintiff Balanced Body University, LLC is to

9      notify this court within ten (10) days of the District of

10     Colorado's ruling on the petition to compel arbitration in

11     Zahourek Systems, Inc. v. Balanced Body University, LLC,

12     No. 1:13-cv-01812-RM-CBS (D. Colo.). If any issues raised in

13     the operative complaint herein are deemed non-arbitrable,

14     then the stay will be lifted and this action may proceed in

15     this court; if all issues are deemed arbitrable, then the

16     instant action will be dismissed.

17

18     [2] Defendant Valeria Zahourek's motion to dismiss for lack

19     of personal jurisdiction (ECF No. 38) and plaintiff's motion

20     for leave to file an amended complaint (ECF No. 36) are

21     DENIED WITHOUT PREJUDICE to their renewal upon lifting of

22     the stay.

23     IT IS SO ORDERED.

24     DATED:  February 21, 2014.

25

26                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
27                          UNITED STATES DISTRICT COURT

28